**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| KH OUTDOOR, L.L.C. and GRANITE STATE OUTDOOR ADVERTISING, INC., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. **1** 03 CV 1855 |
| FULTON COUNTY, GEORGIA, | ) ) | **-HTW** |
| Defendant. | ) ) ) | |

## COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs KH Outdoor, L.L.C. ("KH") and Granite State Outdoor Advertising, Inc. ("Granite State") file this their Complaint and Request for Preliminary and Permanent Injunction and Mandamus Relief against Defendant and allege as follows:

### PARTIES

1.

Plaintiff KH is a limited liability company organized in the State of Georgia.

2.

Plaintiff Granite State is a corporation organized under the laws of the State of Georgia.

FORMS RECEIVED
Consent To US Mag. ____
Pretrial Instructions ____
Tid: ___ NTC

3.

Defendant Fulton County, Georgia ("County") is a political subdivision of the State of Georgia.

## JURISDICTION

4.

Defendant is subject to the jurisdiction of this Court and venue is proper against Defendant under the facts and circumstances as alleged herein.

## FACTUAL ALLEGATIONS

A.      Business Plan and Leases.

5.

Plaintiffs Granite State and KH are in the business of buying or leasing land upon which to construct signs to be used for the dissemination of both commercial and noncommercial speech.

6.

Both Granite State and KH have expended substantial time and effort investigating numerous potential sign locations in the County.

7.

After substantial efforts by Granite State, the owners of interests in several different parcels of real property in the County signed agreements authorizing Granite State to erect and operate a total of twelve (12) signs on said properties.

2

8.

After substantial efforts by KH, the owners of interests in several different parcels of real property in the County signed agreements authorizing KH to erect and operate a total of fifteen (15) signs on said properties.

B.    The Sign Ordinance for the County.

9.

The County's restrictions and regulations regarding signs have been codified by the County Commission (hereinafter "Sign Ordinance," a certified copy is attached hereto as Exhibit A).   The Sign Ordinance creates a comprehensive scheme for regulating the permitting, placement, number, construction, size, height, design, operation, content, and maintenance of signs within the County. Although the Sign Ordinance imposes numerous onerous restrictions on signs, it offers no evidence or findings whatsoever for doing so.  Aside from very narrow, specific exceptions, the Sign Ordinance makes it unlawful to erect a sign within the County without first obtaining a permit. E.g., Sign Ordinance, § 33.2.

10.

Signs which communicate certain favored messages are permitted within all zoning districts within the County and are completely exempt from the Sign Ordinance's permit requirements but subject to its other provisions. E.g id. at §§ 33.4.12(B)(2) ("[t]raffic, parking lot, directional, warning, gasoline pumping,

3

hospital directional, "[o]n site" directional indicating directions or information on deliveries, visitor parking, drive-in window . . . with no additional information other than a logo"); 33.4.12(B)(3) ("seasonal or holiday decorations"); 33.4.12(B)(4) ("[n]oncommercial display signs used in connection with any noncommercial events, including political, civic, health, safety, welfare, and similar events"); 33.4.12(B)(5)-(6) (unilluminated real estate signs); 33.4.12(B)(7) ("[g]arage sale or similar signs"); 33.4.12(B)(8) ("[d]angerous animal" symbols and signs); 33.4.12(B)(9)-(10) (construction signs); 33.4.12(B)(11) (bus shelter and bench signs); 33.4.12(B)(12) (no trespassing signs; government notice signs); 33.4.12(B)(16) (occupant nameplates); 33.4.12(B)(17)-(18) (canopy, awning and suspended signs containing only the name and logo of a use); 33.4.12(B)(19) ("[s]easonal agricultural signs" to announce the sale of agricultural products); 33.4.12(B)(20) ("[h]iring signs"); 33.4.12(B)(21) (vehicle signs related to "daily transportation of person(s), product or service relating to the business referred on the sign"); 33.4.12(B)(22) ("[c]andidate sign[s] . . . regarding a candidate for political office . . . shall exhibit the date of the applicable election").

11.

Signs which communicate certain disfavored messages are prohibited by the Sign Ordinance. For instance, "[n]o sign shall advertise an activity which is illegal under federal, state or local laws." Id. at § 33.3(m). "Off premise signs are

4

prohibited" subject to very narrow exceptions. Id. at § 33.3(n). Billboards are prohibited in all but M-1 and M-2 zoning districts. Id. at § 33.3(o). Banners and flags are banned except for those which identify an entity as permitted by Section 34.4.12(B)(1). Id. at § 33.3(a). Signs on the public right-of-way not displaying content of "local or state governments, public service agencies, railroads and the like" are prohibited. Id. at § 33.3(g). "Any sign not specifically provided for" by the Sign Ordinance is banned and unlawful. Id. at § 33.3(r).

12.

Signs are also prohibited or permitted based upon their configuration and/or location. Window signs are banned except for limited temporary applications. Id. at § 33.3(q). Flashing or blinking signs are prohibited unless they are categorized as "electronic changeable copy signs." Id. at § 33.3(e). "Rows of lights" are prohibited within 150 feet of a street. Id. at § 33.3(c). Although expressly prohibited by Section 33.3(a), flags, banners, balloons, or streamers may be used by "businesses, institutions and residential developments" for "grand openings," "special promotions" and "going out of business/moving sale[s]." Id. at §§ 33.4.12(A)(5)-(6), (8). "Public Uses such as places of religious worship, schools, community centers, or other institutional uses may exhibit banners, flags, balloons, or streamers" to advertise promotional events. Id. at § 33.4.12(A)(7). "Apartment directional signs" may be posted off-premise as may "[w]eekend

directional" and "[r]eal estate directional signs." Id. at §§ 33.4.12(A)(9), (11)-(12). Agriculture, single family residential, CUP, NUP, apartment and townhouse residential districts are limited to only one free standing sign not to exceed 32 square feet in area per street frontage, or one identification monument sign not to exceed 32 square feet in area. Id. at §§ 33.5(A)(1)-(2), 33.5(B)(1)-(2), 33.5(C)(1)-(2). If a free standing sign is selected, its copy may not be changed after the initial message is posted. Id. at §§ 33.5(A)(3)(c), 33.5(B)(3)(c), 33.5(C)(3)(c). Uses in the County's O-I districts are permitted one "free standing primary sign" per street of up to 64 square feet in area and a wall sign per building side facing a street not to exceed 180 square feet in area. Id. at §§ 33.5(D)(1), (3). Unless approved as a marquee sign, wall signs may not have changeable copy. Id. at § 33.5(D)(3). "Internal project identification monuments are permitted adjacent to internal entrance drives" as well, not to exceed 20 square feet in area. Id. at § 33.5(D)(4). Mixed use and commercial and industrial park districts are permitted a free standing primary sign per street of up to 72 square feet in area, a free standing sign "per spin site or out-parcel" identified on a site plan, a wall sign on street facing walls of up to 180 square feet in area for "displaying the name of the institution/business." Id. at §§ 33.5(E)(1)-(2), (4)-(5), 33.5(F)(2)-(3), (5). Content on wall signs may not be changed unless deemed a marquee sign. Id. at §§ 33.5(E)(4), 33.5(F)(5). "[A]nchor tenants" occupying more than 50,000 square

feet of space are permitted wall signs of up to 300 square feet. Id. In addition, one identification monument sign, no larger than 32 square feet in area, may be used for multi-family development entrances or single family subdivision entrances in mixed use areas. Id. at § 33.5(E)(5). Industrial districts, M-1 and M-2, allow signs of up to 672 square feet in area, subject to specific conditions. Id. at § 33.5(G)(1). Otherwise, industrial districts are restricted to the same signs as mixed use districts. Id. at §§ 33.5(G)(2)-(5). "Mobile home park districts" are subject to the same restrictions as other residential areas with the exception that non-residential uses are permitted wall signs no larger than 180 square feet in area with non-changeable content. Id. at §§ 33.5(H)(1)-(4). Identification signs for "a development, project or subdivision" are permitted in street medians subject to the discretion of the County officials. Id. at § 33.4.8. "Businesses, Institutions and other new developments" are permitted a single free standing "Coming soon sign[]" beginning no sooner than four months prior to opening and must be removed within 14 days of the opening. Id. at § 33.4.12(A)(4). "Historical signs" are permitted as a free standing or wall sign, but must be no larger than 16 square feet in area, and are subject to permit requirements. Id. at § 33.4.12(A)(13). Seasonal displays are limited to 15 days except for "Halloween through New Years, where a 61 day period is allowed." Id. at § 33.4.12(B)(3). Signs advertising "noncommercial" events associated with "political, civic, health,

7

safety, and welfare" interests are permitted for 60 days preceding said event. Id. at § 33.4.12(B)(4). "Unilluminated real estate signs" are permitted for an unlimited duration subject to removal within 30 days after the property is disposed of. Id. at §§ 33.4.12(B)(5)-(6). Garage sale and similar signs may be posted at any time before the event subject to removal within two to three days after the sale and are limited to one square foot of display area. Id. at § 33.4.12(B)(7). Construction signs are permitted at any time after construction begins and must be removed when a certificate of occupancy is issued for nonresidential developments, and within 30 days of said issuance for residential construction. Id. at § 33.4.12(B)(9)-(10). Such signs are limited in size to 16 square feet in area per contractor and six square feet in area per subcontractor for nonresidential applications, and six square feet per contractor or subcontractor for residential development. Id. "Candidate signs" are limited to a total display of 105 days and are limited to 16 square feet of display area. Id. at § 33.4.12(B)(22). Other specifically allowed signs in all other zoning districts may be at least 32 square feet in display area. Id. at §§ 33.5(A)-(H). Seasonal agricultural signs are temporally limited to the beginning of the "selling season" and must be removed within seven days thereafter. Id. at § 33.4.12(B)(19). Only one "Hiring sign" is permitted per business, restricted to four square feet in area and three feet in height, without durational limitation. Id. at § 33.4.12(B)(20).

13.

The Sign Ordinance bans signs attached to vehicles, subject to a specified exception. Id. at § 33.3.12(k). Roof signs, portable signs, and sidewalk signs are prohibited throughout the County. Id. at §§ 33.3(b), (i).

14.

Aside from those specifically exempted, signs may not be posted without gaining the affirmative permission of County officials. Id. at § 33.2. An application form must be completed and a fee submitted to the County. Id. The County is never required to make a determination of whether to grant or deny the permission to post the requested sign. Id. Rather, the application can be held indefinitely. Id. Although appeals of enforcement orders may be taken to the County Board of Zoning Appeals, the Sign Ordinance provides no mechanism for an appeal of a denial to post a sign. Id. at §§ 33.2, 33.4.5. Violations of the Sign Ordinance result in criminal citations and penalties. Id. at § 33.4.5. Although variance appeals may be taken to the Board of Zoning Appeals, as applied to signs, the process lacks procedural safeguards required to protect the First Amendment rights of individuals, businesses and organizations wishing to engage in free speech through the use of signs. Id. at § 33.4.6. Thus, County officials retain complete discretion over what signs will be allowed. They are never required to conclude their deliberations. Id. Applicants may not post a sign if the County does

9

not act promptly.  Id.  The Sign Ordinance contains no provision for judicial review of the County's denial of a sign permit.  Id.  The County is not required to initiate judicial review of its denial of a permit.  Id.

15.

In numerous instances, the Sign Ordinance provides unbridled discretion to County officials.  For example, county officials may decide whether displays are "rows of lights" and are prohibited within 150 feet of a street, or whether such display is a seasonal or holiday decoration and exempt from permit requirements. Id. at §§ 33.3(c), 33.4.12(B)(3).  Officials are granted the authority to determine whether certain signs are permitted in the public right-of-way.  Id. at §§ 33.3(g), 33.4.8, 33.4.9.  County officials have discretion to decide if a "use is customary" in substituting marquee signs for wall signs.  Id. at § 33.4.12(A)(3).  The County retains discretion to determine which signs are "coming soon signs," "grand opening signs," "promotional signs," "event signs," and "going out of business/moving sale" signs.  Id. at §§ 33.4.12(A)(4)-(8).  County officials are free to determine whether an entity is a "public use."  Id. at § 33.4.12(A)(7).  Officials are free to decide whether a real estate sign is a "weekend directional" or "real estate directional sign."  Id. at §§ 34.4.12(11)-(12).  County officials retain discretion to determine whether banners are prohibited or allowed based upon which provision of the regulations they decide to honor.  Compare id. at § 33.3(a)

10

with §§ 33.4.12(A)(5)-(8).  The County retains discretion to determine whether a flag represents a "corporation, agency, civic, religious, patriotic, fraternal or similar" organization.  Id. at § 33.4.12(B)(1).  Similarly, County officials are granted discretion to determine whether an event is "noncommercial," i.e., "political, civic, health, safety, and welfare" or some "similar" event.  Id. at § 33.4.12(B)(4).  County officials may "designate" where bus shelter and bench signs are permitted.  Id. at § 33.4.12(B)(11).  Likewise, the County retains discretion to permit such signs within the public right-of-way.  Id.  County officials have discretion to consider whether a vehicle with a permitted sign is a "junk vehicle."  Id. at § 33.4.12(B)(21).  The County has discretion to determine whether a sign is abandoned and whether an abandoned sign is exempted from removal by virtue of being a "billboard."  Id. at § 33.4.4.  The Sign Ordinance grants discretion to County officials and employees to determine whether a "seeming violation" exists.  Id. at § 33.4.5.  The Sign Ordinance provides for variances to the Sign Ordinance's requirements at the discretion of the Board of Zoning Appeals.  Id. at § 33.4.5.  The County retains discretion to exempt certain "traffic, safety and/or emergency" signs.  Id. at § 33.4.12(B)(2). County officials are permitted discretion to determine whether a "dangerous animal" symbol or sign is "necessary."  Id. at § 33.4.12(B)(8).

C.    Granite State's Sign Applications.

16.

Pursuant to the Sign Ordinance, Granite State submitted eight (8) completed sign applications to the County on or about May 15, 2003.

17.

The authorized County official rejected Granite State's eight applications on May 19, 2003. A handwritten notation on each application stated that the application had been "rejected."

18.

Granite State's eight applications were denied based upon the County's sign restrictions.

19.

Granite State has subsequently submitted four (4) additional completed sign applications to the County. Three (3) were submitted on May 22, 2003 and one was submitted on June 16, 2003.

20.

The County has not yet granted or denied these applications.

D.    KH's Sign Applications.

21.

Pursuant to the Sign Ordinance, KH submitted fifteen (15) completed sign applications to the County on or about June 13, 2003.

22.

KH has not received any response from the County to its sign applications submitted on June 13, 2003.

E.    Constitutional Flaws in the Sign Ordinance.

23.

The Sign Ordinance requires citizens and property owners to seek prior approval of County officials prior to posting signs.  The Ordinance contains no time limits for County officials to grant or deny sign permits.  The appeal mechanism provided for within the Sign Ordinance also fails to provide adequate safeguards to protect applicants' First Amendment rights.  In effect, Government officials are allowed an unlimited time to grant or deny sign permits.  As currently set forth in the Ordinance, judicial review is completely unavailable.  This is tantamount to complete discretion and is invalid.  The Sign Ordinance fails to comply with these and other safeguards mandated by the United States Supreme Court.  Such power cannot be left to public officials when licensing First Amendment activities.

13

24.

The Sign Ordinance grants County officials an unconstitutional level of discretion to decide whether a sign permit will be granted or denied, or whether a permit is required at all.

25.

A restriction on otherwise protected speech is invalid under the First Amendment to the United States Constitution and equivalent provisions of the Georgia Constitution unless it seeks to implement a substantial governmental interest, directly advances that interest, and reaches no further than necessary to accomplish the given objective. Despite its draconian restrictions placed upon signs, the Sign Ordinance fails to provide any evidence or findings, or even references thereto, that its regulations will directly advance the government's stated interests.

26.

The Sign Ordinance restricts and prohibits far more speech than could ever be justified by legitimate governmental objectives.

27.

Government regulations which favor commercial speech over noncommercial speech are invalid under the First Amendment to the United States Constitution and equivalent provisions of the Georgia Constitution.

14

28.

The Sign Ordinance impermissibly favors some noncommercial speech over other noncommercial speech without serving any compelling governmental interests. Such favoritism is unconstitutional under the First Amendment to the United States Constitution and equivalent provisions of the Georgia Constitution.

29.

The Sign Ordinance's content-based regulations of noncommercial speech are subject to strict scrutiny and are, therefore, void unless absolutely necessary to uphold a compelling government interest. There is no compelling government interest underlying the Sign Ordinance.

30.

Where the constitutional rights of citizens and property holders are infringed upon by an ordinance which is confusing, vague, overbroad, or misleading, such legislation is invalid under the United States Constitution and the Constitution of the State of Georgia.

31.

Any government regulation of speech activity must leave open fundamental methods of communication. One such method of communication is basic yard and window signs. Such signs cannot be restricted, regardless of the content of their messages, without satisfying strict scrutiny.

32.

Plaintiffs and other businesses, organizations and individuals are entitled to equal protection under the laws of the County.  Sign regulations that favor one type of business or organization over others must be justified by the government.

33.

Where government action will result in the destruction of a substantial part of the lawful economic benefit to be derived from the lawful use of private property, it effects a taking of private property without just and adequate compensation.  Such actions are void under the United States Constitution and the Constitution of the State of Georgia.

34.

Where the government imposes punitive fees or criminal punishment for alleged violations of the provisions of its regulations without affording the alleged violator a right to be heard, a deprivation of procedural due process rights occurs. Such actions are void under the United States Constitution and the Constitution of the State of Georgia.

REQUEST FOR RELIEF

COUNT ONE

35.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-34 above as if set forth verbatim herein.

36.

The Sign Ordinance requires citizens and property owners to seek the prior approval of County officials prior to posting signs. It fails, however, to circumscribe the time in which government officials must approve or deny requests for permits.

37.

To the extent the County's appeal procedures apply to free speech activities via the medium of signs, the Sign Ordinance fails to provide procedural safeguards mandated by the United States Supreme Court. No judicial review is provided for within the Ordinance. The County is not required to initiate judicial review of permit denials.

38.

Because these aspects of the Sign Ordinance are constitutionally invalid and inseparable from the remainder of the Ordinance, this Court should declare the entire Sign Ordinance invalid. Because no valid regulation prohibited Plaintiffs'

requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

39.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of the unconstitutional Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their and others' constitutional rights.

## COUNT TWO

40.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-39 above as if set forth verbatim herein.

41.

The Sign Ordinance requires citizens and property owners to seek permission from County officials prior to posting signs. Government officials are granted virtually limitless discretion in deciding whether a sign permit will be granted or denied. Such discretion in government licensing of First Amendment activities is unconstitutional.

42.

Because this aspect of the Sign Ordinance is constitutionally invalid and inseparable from the remainder of the Ordinance, this Court should declare the entire Sign Ordinance invalid. Because no valid regulation prohibited Plaintiffs' requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

43.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of the unconstitutional Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their and others' constitutional rights.

COUNT THREE

44.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-43 above as if set forth verbatim herein.

45.

Several sections of the Sign Ordinance place a tremendous burden on the ability of citizens and property holders in the County to communicate commercial or noncommercial messages using even the most fundamental methods of

communication. Such onerous provisions leave virtually no avenue by which citizens can speak freely. These sections constitute an unreasonable, overbroad, and unduly burdensome restriction of the freedom of citizens and property holders to speak freely. E.g., County of Ladue, 512 U.S. 43, 114 S.Ct. 2038 (1994).

46.

Because this aspect of the Sign Ordinance is constitutionally invalid and inseparable from the remainder of the Ordinance, this Court should declare the entirety of the Sign Ordinance invalid. Because no valid regulation prohibited Plaintiffs' requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

47.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of the unconstitutional Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their and others' constitutional rights.

COUNT FOUR

48.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-47 above as if set forth verbatim herein.

20

49.

The Sign Ordinance is constitutionally invalid because it permits government officials to regulate both commercial and noncommercial speech and yet includes no findings to support its comprehensive regulation and prohibition of constitutionally protected speech. The County cannot meet its burden of showing that each of its many regulations of speech will directly advance any substantial governmental interest in a material way.

50.

Because this constitutional defect is inseparable from the remainder of the Ordinance, the Court should declare the entire Sign Ordinance invalid and permanently enjoin its enforcement. Because no valid regulation prohibited Plaintiffs' requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

51.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of the unconstitutional Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their and others' constitutional rights.

## COUNT FIVE

### 52.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-51 above as if set forth verbatim herein.

### 53.

The Sign Ordinance is constitutionally invalid because it restricts or prohibits far more speech than could ever be justified by its stated purposes or any other legitimate governmental objectives.

### 54.

Such speech restrictions are unconstitutional under the standards established by the Georgia and United States Supreme Courts and, therefore, the Court should invalidate the Sign Ordinance and permanently enjoin its enforcement.

### 55.

Because this constitutional defect is inseparable from the remainder of the Ordinance, this Court should declare the entire Sign Ordinance invalid.  Because no valid regulation prohibited Plaintiffs' requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

### 56.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of the unconstitutional

Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their and others' constitutional rights.

## COUNT SIX

### 57.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-56 above as if set forth verbatim herein.

### 58.

Numerous sections of the Sign Ordinance are constitutionally invalid in that they favor commercial over noncommercial speech. These sections grant priority to commercial messages to the detriment of the County's citizens who might choose to speak regarding any other noncommercial message. The regulations placed upon citizens by these sections are a fundamental part of the Sign Ordinance as a whole.

### 59.

These sections are unconstitutional under the standard established by the United States Supreme Court.

### 60.

Because these sections of the Sign Ordinance are constitutionally invalid and inseparable from the remainder of the Ordinance, this Court should declare the

entire Sign Ordinance invalid. Because no valid regulation prohibited Plaintiffs' requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

61.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of the unconstitutional Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their and others' constitutional rights.

COUNT SEVEN

62.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-61 above as if set forth verbatim herein.

63.

Numerous sections from the Sign Ordinance, are constitutionally invalid in that they regulate the content of noncommercial speech. As such, these sections patently abridge the well-established constitutional rights of the citizens of the County. The regulations placed upon citizens by these sections are a fundamental part of the Sign Ordinance as a whole.

24

64.

Because these sections of the Sign Ordinance are constitutionally invalid and inseparable from the remainder of the Ordinance, this Court should declare the entire Sign Ordinance invalid. Because no valid regulation prohibited Plaintiffs' requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

65.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of the unconstitutional Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their and others' constitutional rights.

## COUNT EIGHT

66.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-65 above as if set forth verbatim herein.

67.

Several sections from the Sign Ordinance are constitutionally invalid in that they favor the commercial speech of certain businesses about certain commercial topics while prohibiting other legal and truthful commercial information.

Government entities are not allowed to draw such distinctions even in regard to commercial speech.

68.

Because these sections are constitutionally invalid and inseparable from the remainder of the Sign Ordinance, the entire Sign Ordinance should be invalidated. Because no valid regulation prohibited Plaintiffs' requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

69.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they has suffered as a result of the unconstitutional Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert their and others' constitutional rights.

COUNT NINE

70.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-69 above as if set forth verbatim herein.

71.

The Sign Ordinance's favoritism of the speech of certain groups and organizations, while prohibiting speech by other entities that would be no more

26

detrimental to any legitimate governmental interest, has denied to Plaintiffs equal protection under the law.

72.

Because this aspect of the Sign Ordinance is constitutionally invalid and inseparable from the remainder of the Ordinance, this Court should declare the entirety of the Sign Ordinance invalid. Because no valid regulation prohibited Plaintiffs' requested use of their property, Defendant should be ordered to permit Plaintiffs to erect the requested signs.

73.

In addition, pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for the damages they have suffered as a result of the unconstitutional Sign Ordinance and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert they and others' constitutional rights.

COUNT TEN

74.

Plaintiffs incorporates by reference the allegations in Paragraphs 1-73 above as if set forth verbatim herein.

75.

Because no valid or constitutional law that would have prevented the proposed signs was in effect at the time Plaintiffs applied for permission to post the proposed signs, the County must now authorize and permit Plaintiffs' proposed use of their leasehold property.

76.

Therefore, pursuant to Georgia law, the Court should order the Defendant to authorize and permit the signs as applied-for by Plaintiffs.

## REQUEST FOR DAMAGES

## COUNT ELEVEN

77.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-76 above as if set forth verbatim herein.

78.

The County's conduct in enforcing unconstitutional restrictions upon signs has deprived Granite State and KH of their right to post commercial and noncommercial messages on signs in the County. Plaintiffs would have collected substantial revenue on a monthly basis from the signs for which they requested permits. In addition to Plaintiffs' actual economic losses, Plaintiffs have also suffered irreparable damage by being deprived of their free speech rights. The jury

(7)    For a trial by jury on any issue that should not be resolved by the Court as a matter of law; and

(8)    For such other and further relief as the Court may deem just and equitable.

DATED this 30th day of June, 2003.

Respectfully submitted,

BY:    WEBB & PORTER, L.L.C.

E. Adam Webb
  Georgia State Bar No. 743910
William E. Porter
  Georgia State Bar No. 584999

4167 Dunwoody Terrace
Atlanta, Georgia  30341
(770) 458-8300
(770) 458-8400 (fax)

Attorneys for Plaintiffs



# EXHIBIT / ATTACHMENT



**(To be scanned in place of tab)**

ADOPTED BY THE FULTON COUNTY BOARD OF COMMISSIONERS
DECEMBER, 5,1990
AMENDED SEPTEMBER 1, 1999 (99Z-069)

# ARTICLE XXXIII

## SIGNS

33.1    <u>INTENT</u>

It is the intent of this Article to eliminate excessive and confusing sign displays which do not relate to the premises on which they are located; to eliminate hazards to pedestrians and motorists brought about by distracting sign displays; to prevent the destruction of the natural beauty and environment of the County; and to protect the public health, safety and general welfare. This Article shall have the effect of restricting the continued existence of any abandoned or non-conforming signs unless in compliance with the terms of this Article. It is the intent of this Article that over time all non-conforming signs shall eventually be eliminated. This Article is intended to encourage the effective use of signs as a means of communication; to improve traffic and pedestrian safety; to minimize the possible adverse effects of signs on public and private property and on the sense of sight; and to enable fair and consistent enforcement of these regulations. This Article recognizes the competing interests in signage and the regulations herein are intended to balance these interests to preserve and improve Fulton County's quality of life; and to protect the free speech provisions of the U.S. Constitution.

33.2    <u>PERMIT REQUIRED</u>

A sign permit shall be required and a fee shall be paid according to the current fee schedule for all signs requiring a permit as provided herein. No permit shall be required for a change of copy on changeable copy signs. Any change in the permanent message shall require a new permit. An electrical permit is also required for all signs using electrical wiring. Prior to the issuance of a sign permit for a sign by the Department of Environment and Community Development, the applicant for such a permit must present a photograph of the proposed sign location, and other signs located on the property, a scaled site plan of the site, sign detail and total wall area dimensions for wall signs. The permit sticker must be displayed on every sign. (Amended 04/07/93, 11/03/93)

j.      No sign copy shall be permitted on trash receptacles, vending machines or similar structures, except for copy that indicates product sold or dispensed from within the structure.

k.      No sign or advertising device(s) shall be attached to any vehicle or trailer parked so as to be visible from a public right-of way, including vehicles with for sale signs except in a permitted auto sales business and excluding vehicle(s) used for daily transportation, deliveries or parked while business is being conducted on-site.(See Vehicle Sign 33.4.9.B(21)).

l.      No sign shall depict nudity, sexual conduct, obscene or pornographic material as defined in the United States and/or Georgia Codes.

m.      No sign shall advertise an activity which is illegal under federal, state or local laws.

n.      Off Premise signs, except as otherwise permitted in this Article.

o.      Billboards are prohibited except in the M-1 and M-2 Districts.

p.      Signs not in good repair, in violation of codes, broken panels, chipped paint, damaged support structures, missing letters or abandoned signs which advertise an activity, business, product or service no longer conducted or available.

q.      Window signs, except as permitted in Article 33.4.12.B(14).

r.      Any sign not specifically provided for in this Resolution is unlawful.

## 33.4   GENERAL SIGN REGULATIONS

This section applies to signs allowed in all use districts except when specifically excluded by conditions of zoning.

**33.4.1 NONCOMMERCIAL MESSAGES.** Any sign, display, or device allowed herein may contain, in lieu of any other message or copy, any lawful non-commercial message that does not direct attention to a business operated for profit or to a commodity or service for sale, as long as such sign, display or message complies with the size, height and area requirements herein.

height.  Column heights (whether structural or non-structural) shall be allowed to exceed the maximum wall height by three feet.  (Amended 09/04/91)

**Area.**  Sign area is calculated by squaring the area on one side of all sign faces.  Signs are entitled to double faces and signs may have more than one single or double faced signs as long as the total area of the single sides do not exceed the maximum sign area allowed.  Three and four sided signs are not allowed.  Regardless of the geometric configuration of the sign, the sign face shall be calculated by adding the total squared areas of the polygons covering the sign face, including any open space within the polygons.  **(See "Sign Area" in Definitions, Article 3.3.19 and Illustrations XXXIII)**

**Size.**  The maximum size of a freestanding sign structure shall not exceed 3.5 times the sign face area.  Any open air space shall be included in calculating the total maximum allowable sign structure size.

**Graphics.**  Lettering and numerals on signs located next to limited access, arterial and major collector streets shall be at least 4 inches in height and, next to all other streets, lettering and numerals shall be at least 3 inches in height.

**Safety.**  No sign shall obstruct or impair the vision of any vehicle operator at the intersection of any public rights-of-way, at any entrance onto or exit from a public road, or any other location where said obstruction could create a traffic hazard. No sign shall be constructed or located where by reason of its position, shape, wording or color, may be confused with an authorized traffic or emergency vehicle device. All signs shall be built in compliance with all applicable building and electrical codes.

33.4.10    **PROPERTY NUMBERS. All properties shall be identified by a property number** of a minimum size as subsequently identified in this paragraph. All signs including temporary signs and I.D. Monuments on properties which have been assigned a property number (street number) shall display the numbers and/or letters with characters that are at least 4 inches tall for signs located along limited access, arterial and major collector streets, and 3 inches tall along minor collector and local streets. **The area of the property number shall not be subtracted from the total message area allowed on a sign.**

33.4.11    **SIGN LIGHTING.** Sign lighting shall not be directed skyward and the source of light shall be effectively shielded from adjacent residential properties and streets. Light intensity shall not exceed 1.1 footcandles measured at all residential property lines.

(except for the sign face) shall be composed primarily of brick, granite, stone, marble, terrazzo, stucco, wood and/or other materials specifically approved by the Department of Environment and Community Development. (Amended 04/07/93)

d)   Lighting shall be indirect and shall comply with other restrictions on lighting herein.

e)   The total **identification monument sign area** per face shall not be greater than 1.2 times the district maximum of the primary sign substituted for. The sign face shall be calculated excluding structural support and embellishments (See 33.4.9 Sign Specifications, Size and Illustrations XXXIII-3). (Amended 05/06/92)

f)   Identification monument signs constructed as part of an entry wall shall comply with the height and setback requirements of an entry wall (See 4.11 FENCES AND WALLS).

2.   **DIRECTORY.** A directory, listing **occupants** within buildings and/or listing **buildings**, or displaying maps, within a development or complex may be located in all districts as long as lettering does not exceed 6 inches in height, the sign is not more than 8 feet above ground level, and it does not exceed 30 square feet in area per face and no more than four single faces. Directories shall not be located closer to any street right-of-way than 75 feet.

3.   **MARQUEE SIGNS.** Marquee wall signs may be substituted for wall signs for uses such as theaters and hotels where their use is customary. Such signs shall not extend above the roof line of the building nor extend more than 2 feet from the face of the building upon which secured. Allowable sign dimensions shall be the same as for wall signs in the applicable district.

4.   **COMING SOON SIGNS.** Businesses, Institutions and other new developments may exhibit a freestanding ground sign announcing a future opening (Coming Soon) beginning no more than 4

9. **APARTMENT DIRECTIONAL** signs, provided they are removed within 14 days following the achievement of 90 percent occupancy for a multi-family development. There shall be **no more than three such signs** per multi-family development which may be located only with the permission of the property owner and outside of the right-of-way as required by **Section 33.3**. Such signs shall be no farther than two miles from the property to which they refer and shall not exceed the sizes given below:

a) 16 square feet in areas adjacent to arterials and major collectors.

b) 4 square feet in area adjacent to all other streets.

c) signs referring to the same apartment development shall be separated by a minimum distance of 1000 feet measured along the street frontage and shall not obstruct the required sight distance required in AASHTO standards administered by the County Traffic Engineer.

A permit application for an apartment directional sign shall be accompanied by an affidavit from the apartment owner affirming that the occupancy rate of the advertised apartment development is less than 90 percent. A permit shall be valid for 6 months, and one additional permit for 6-months may be issued with the submission of a new application, payment of a sign permit fee and the submission of a new affidavit affirming that the occupancy rate continues below 90 percent. A maximum of three signs shall be permitted for each apartment complex and the permits shall be for concurrent time periods to expire simultaneously. Color-coded dated stickers alternated by time period shall be used by the **Department of Environment and Community Development** to assist in enforcement. Upon expiration of the second 6-month period, a waiting period of 6 months must expire before the permitting process cycle may be reinitiated. (Added 10/2/91, Amended 04/07/93)

g)    Signs shall have the permit number, company name and phone number identifying the party responsible for the removal of the signs (including supporting devices) and the name of a officer of the subdivision development being advertised.

12.    **REAL ESTATE DIRECTIONAL** signs, provided they are removed within 14 days following issuance of a certificate of occupancy for the final unit of each phase of a single family subdivision. There shall be **no more than three such signs** per subdivision which may be located only with the permission of the property owner and out of the right-of-way as required by **Section 33.3.** Such signs shall be no farther than two miles from the property to which they refer and shall not exceed the sizes given below:

a)    16 square feet in area adjacent to major thoroughfares.

b)    4 square feet in area adjacent to all other streets.

c)    signs referring to the same subdivision shall be separated by a minimum distance of 1000 feet measured along the street frontage and shall not obstruct required sight distance necessary for public safety.

d.    32 square feet in area adjacent to major thoroughfares for kiosk type signs advertising at least four or more subdivisions

13.    Unilluminated **HISTORICAL SIGNS.** Signs used for the purpose of identifying sites of historic preservation may be placed on the property either as a free standing or wall sign and shall not exceed 16 square feet, one per street frontage and located outside of the right-of-way.

except Halloween through New Years, where a 61 day period is allowed.

4.  **NONCOMMERCIAL** display signs used in connection with any noncommercial events, including political, civic, health, safety, welfare and similar events, provided all such signs are placed not more than 60 days prior to the event and the sign shall exhibit the date of the conclusion of the campaign or event. Said sign shall not exceed 16 square feet in area and shall be removed within 15 days following the advertised event's conclusion (See 32.4.12. B(21) Candidate Sign).

5.  Unilluminated **REAL ESTATE SALES AND LEASE SIGNS** in all but single-family dwelling districts provided they are removed within 30 days of sale or of being 80 percent leased. Such signs shall be unilluminated and limited to one on-premise sign per street frontage, and shall not exceed 16 square feet in area.

6.  Unilluminated **REAL ESTATE SALES AND LEASE** SIGNS **in AG-1 and single-family** dwelling districts provided they are removed at the owner's expense within 30 days of lease or sale. Such signs shall be limited to one on-premise sign per street frontage and shall not exceed 16 square feet in area along arterials and major collectors, or 4 square feet adjacent to all other streets. Subdivisions in which fewer than 80 percent of the lots have been sold shall be entitled to one such 16 square foot sign per access-providing street.

7.  **GARAGE SALE** or similar signs, provided such signs are located out of the right-of-way as required by **Section 33.3**, and on private property with the owner's consent. Such signs shall be located no farther than one mile away from the property to which the signs refer, do not exceed one square foot in area and are removed within 2 3 days following the sale. Garage sale signs are exempt from the minimum lettering-numbering provisions.

8.  **DANGEROUS ANIMAL** Uniform Symbols and Signs. Dangerous animal and similar warning symbols and signs may be located wherever necessary to provide sufficient warning to the public.

17.   CANOPY AND AWNING SIGN.  Awnings and canopies may contain the name and logo of a use.  Such signs shall be deducted from allocated wall sign area.

18.   SUSPENDED (HANGING) SIGNS.  Signs suspended from a porch or similar shelter may contain the name and logo of a use. Such signs shall be oriented for pedestrian use and have no more than 3 square feet.

19.   SEASONAL AGRICULTURAL SIGNS.  Temporary **directional** signs for agricultural products grown and/or sold in the AG-1 District or at institutions provided such signs are posted no earlier than the commencement of selling activity and are removed within 7 days of the end of the selling season.  Such signs shall not exceed 16 square feet in area, and shall be located only on private property with the owner's permission in compliance with **Section 33.3** which requires that all signs be located out of the right-of-way.

20.   HIRING SIGN.  An advertisement sign for employment. Said sign shall be located behind the minimum yard setback and shall not exceed four square feet in size and three feet in height.  Only one sign per business is allowed for the location for which the employment is advertised.

21.   VEHICLE SIGN.  Sign(s) on a vehicle that is used for daily transportation of person(s), product and or service relating to the business referred to on the sign.  Such signage may be the magnetic type or the sign must be permanently affixed to the vehicle and placed so that it does not present a safety hazard during operation.  Said vehicle must be operable, have inflated tires,  have a valid license plate and tag and not be considered as a junk vehicle.  Said vehicles shall be parked in a legal designated parking space belonging to the business to which the sign makes reference unless it is being operated to conduct business off-site . No trailer or non-motorized vehicle will be allowed under this provision.

22.   CANDIDATE SIGN.  Signs whereby the public is to be informed

      a.     Have a maximum height of 6 feet,

      b.     Not be directly illuminated, and shall

      c.     Not have changeable copy.

## B.     SINGLE FAMILY RESIDENTIAL, CUP AND NUP DISTRICTS

1.     One maximum 32 square foot free standing primary sign per property occupied with an institutional use shall be permitted for each street on which the lot has frontage.

2.     One maximum 32 square foot identification monument sign in lieu of a freestanding sign or two single-faced monument signs not to exceed 16 square feet each for each side of a platted single family subdivision entrance, identifying the name of the subdivision only. Subdivisions with more than one identifiable section as shown on an approved preliminary plat may be allowed internal identification monuments of 16 square feet on one side of the entrance to each section.

Identification monument signs shall comply with the area and height requirements of Section 33.4.9, as well as all other requirements of the Section.

3.     Free standing signs shall:

      a.     Have a maximum height of 6 feet,

      b.     Not be directly illuminated, and shall

      c.     Not have changeable copy.

## C.     APARTMENT AND TOWNHOUSE RESIDENTIAL DISTRICTS

1.     One maximum 32 square foot free standing primary sign per multi-family property or property occupied with an institutional use shall be permitted for each street on which the lot has frontage.

2.     One maximum 32 square foot identification monument sign in lieu of a freestanding sign or two single-faced monument signs not to exceed 16 square feet each for each side of the development's entrance identifying the name of the apartments/townhouses only.

each street on which the non-residential use has up to and including 300 feet of frontage, with lots having 301 to 1,000 feet of frontage allowed 64 square feet, and lots in excess of 1,000 feet of street frontage allowed 72 square feet if located on an arterial street. (excludes spin sites and out-parcels)

2.    One, maximum 32 square foot, free standing sign per spin site or out-parcel which is identified on a site plan approved pursuant to a single zoning case.

3.    Free standing signs shall:

      a.    Have a maximum height of 10 feet,
      b.    Not be directly illuminated.

4.    Wall signs are permitted for the purpose of displaying the **name of the institution/business occupying the building** on street-facing walls (including windows and doors). Businesses without street frontage that have exterior entrances to the building are entitled to one wall sign on the exterior wall of the business. Said wall sign(s) shall not to exceed the smaller of 5 percent of the applicable wall area or 180 square feet, confined to the upper 30 feet of the facade. Wall signs shall not have changeable copy unless approved as a marquee sign.

      An anchor tenant that has over 50,000 square feet of net leasable floor space and has independent leased space within a shopping center shall be allowed wall signs not to exceed 5 percent of the applicable wall area or 300 square feet whichever is smaller.

5.    One maximum 32 square foot monument sign or two single-faced monument signs not to exceed 16 square feet each for each side of a multi-family development entrance or a single family subdivision entrance, identifying the name of the development only.


F.    **COMMERCIAL AND INDUSTRIAL PARK DISTRICTS**

G.   **INDUSTRIAL DISTRICTS**

1.   Within industrial districts (M-1 and M-2), billboards shall not exceed 672 square feet and shall be located according to the following standards:

   a.   Along, and oriented toward, State numbered primary routes or national highways only,

   b.   At least 500 feet from all residential or AG-1 zoning districts,

   c.   Minimum 100 foot setback from right-of-way,

   d.   Minimum of 1500 feet from other billboards, and

   e.   In compliance with applicable height regulations for the district in which located.

2.   One, maximum 64 square foot, free standing primary sign for each street on which the industrial zoned lot has up to and including 1,000 feet of frontage, with lots in excess of 1,000 feet of street frontage allowed 72 square feet if located on an arterial street. (excludes spin sites and out-parcels)

3.   One, maximum 32 square foot, free standing sign per spin site or out-parcel which is identified on a site plan approved pursuant to a single zoning case.

4.   Free standing signs shall have a maximum height of 20 feet.

5.   Wall signs are permitted on street-facing walls (including windows and doors).   Businesses without street frontage that have exterior entrances to the building are entitled to one wall sign on the exterior wall of the business.   Said wall sign(s) shall not exceed 5 percent of the applicable wall area or 180 square feet, whichever is smaller.   Wall signs shall not have changeable copy unless approved as a marquee sign.

   An anchor tenant that has over 50,000 square feet of net leasable

# SIGN AREA, HEIGHT AND SETBACK ILLUSTRATIONS

## SIGN HEIGHT

### ILLUSTRATION XXX111 - 1



A=HEIGHT (Measured From Finished Grade)



(Finished Grade Below Centerline Of Road)

# SIGN AREA MEASUREMENT
## (WALL SIGN)
## ILLUSTRATION XXX111 - 2





Sign Area Totals
Letters Attached To Wall

Sign Area Totals Sign Face
Including Copy And Background

SIGN AREA = A x B



APPLICABLE WALL AREA

WALL MEASUREMENT = A x B

ORIGINAL

☙AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

*Northern* **District of** *Georgia*
*Atlanta Division*

KH OUTDOOR, L.L.C. and GRANITE
STATE OUTDOOR ADVERTISING, INC.

      Plaintiffs,

                                    **SUMMONS IN A CIVIL CASE**

      **V.**

                                **CASE NUMBER:** **1 03 CV 1855**

FULTON COUNTY, GEORGIA

      Defendant.

      **TO:** (Name and address of Defendant)
        *Fulton County Georgia    Thru -*
        Thomas C. Andrews, County Manager
        Fulton County Georgia
        141 Pryor Street
        Atlanta, Georgia  30303
        (404) 730-4000

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

        E. Adam Webb
        WEBB & PORTER, L.L.C.
        4167 Dunwoody Terrace
        Atlanta, Georgia  30341
        (770) 458-8300
        (770) 458-8400 (fax)

an answer to the complaint which is served on you with this summons, within ___*20*___ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS
CLERK                            JUL 0 2 2003
                                DATE

(By) DEPUTY CLERK